**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION**

EMERSON OSBORNE,                                                    PETITIONER

v.                                    CIVIL ACTION NO.:  2:12cv55-NBB-SAA

RONALD KING,                                                       RESPONDENT

**<u>MEMORANDUM OPINION AND ORDER</u>**

Petitioner Emerson Osborne, Mississippi prisoner no. R-7082, has filed a federal habeas

petition pursuant to 28 U.S.C. § 2254 challenging his State court conviction for capital murder.

Having considered the submissions of the parties, the State court record, and the law applicable

to Petitioner's claims, the Court finds that the petition should be denied.

**Background Facts and Procedural History**

This case involves the murder of Lucy Jackson, an eighty-six year old woman who lived

alone in her home in Shelby, Mississippi, at the time of her death in January 2006.  In connection

with her death, Petitioner, along with Otis Braboy and Jimmy Giles, were indicted for capital

murder with an underlying felony of robbery.  Petitioner stood trial for the crime in November

2008 in the Circuit Court of Bolivar County, Mississippi.  The testimony offered at Petitioner's

trial that is relevant to the issues raised in this petition is as follows:

Robbye Braboy testified that her son, Otis Brayboy, was charged in the same indictment

as Petitioner.  She testified that she was out drinking and walking to visit her daughter around

midnight on January 14, 2006, when she saw her son, Petitioner, Giles, Ashante Jenkins, and

another male together.  She stated that her son told her to go home, and she testified that she did.

Jimmy Giles testified that he knew Lucy Jackson and would periodically check on her.

1

He stated that on the night of January 14, 2006, he was walking home when Braboy and Petitioner approached Giles and demanded that Giles go knock on the door of Jackson's home. Giles testified that Braboy was a "bully" that Giles had known his entire life, and that, apparently in an attempt to encourage Giles' cooperation, Braboy hit Giles in the face. Giles maintained that he knocked on the door of Jackson's home and identified himself. He stated that Jackson unlocked the door and cracked it open, and that Braboy hit her. Giles testified that Braboy and Petitioner then rushed in the home, striking Jackson. He stated that Jackson was pushed down, and that Petitioner began hitting her with a stick. Giles estimated that he stood watching the attack for two to three minutes before he fled. He testified that he was afraid, and that both Petitioner and Braboy later threatened to kill Giles' grandmother if Giles told anyone about what happened at Jackson's home.

Giles denied that he was with Ashante Jenkins on the night of Jackson's murder, and he stated that he never saw Ms. Braboy that evening. Giles stated that he was arrested for grand larceny on January 16, 2006 and was released. He testified that he was arrested in connection with Jackson's death on January 28, 2006, and had entered a guilty plea in the case. Giles had not been sentenced on the charge at the time of trial and testified that he did not know whether he would receive less than the maximum fifteen-year sentence based on his cooperation in this case.[1] Defense counsel cross-examined Giles as to inconsistencies in his various statements to authorities, which included discrepancies as to whether he knew Petitioner at the time of the incident in question, whether he had stayed and watched the attack on Jackson, and whether a

---

[1] Giles pleaded guilty to accessory before the fact robbery and was sentenced on May 5, 2009, to serve fifteen years in the custody of the Mississippi Department of Corrections, with ten years suspended. (*See* Trial Tr. vol. 2, 260-84.)

stick was used to beat Jackson.

Wesley Jefferson, an inmate serving jail time for aggravated assault and drive-by shooting, testified that he was incarcerated with Petitioner in Marshall County in 2006. He claimed that Petitioner confessed to him an involvement in Jackson's murder. Jefferson maintained that Petitioner said that he and Braboy were smoking crack and watching Jackson's home for a few days, planning to rob her. Jefferson testified that Petitioner said that they had gotten Giles involved because they needed a third man to be a lookout. Jefferson claimed that Petitioner told him that he and Braboy got Giles to knock on the door, and that when Jackson opened the door, Braboy and Petitioner burst in Jackson's house and beat her with their fists. Jefferson stated that Petitioner told him that Jackson had scratched him, and that Braboy had beaten her with a 2 x 4 board. Jefferson claimed that Petitioner said that Giles ran away when he saw what was happening. Jefferson testified that Petitioner stated that he and Braboy only got $35 or $40 from Jackson's home.

On cross-examination, Jefferson admitted that he had called his mother, who lived in Shelby, and discussed the case after talking about it with Petitioner. Jefferson claimed that although he got this information from Petitioner in March 2006, he did not share the information with authorities until June 2006. He denied, however, that he was given any promises in exchange for his testimony.

Through the testimony of various witnesses, the jury heard how Petitioner was developed as a suspect in this case. Apparently, sometime after January 16, 2006, Jimmy Giles was overhearing talking at the Warrington Clinic in Shelby, Mississippi, and the receptionist at the clinic learned that Giles might have information about Jackson's death. The receptionist

3

eventually spoke to the police, who brought Giles into the Sheriff's Department for questioning. Giles gave a statement, and warrants issued for Petitioner and Braboy.

Dr. Steven Hayne, the pathologist who performed the autopsy in this case, was accepted by the trial court as an expert in anatomic and forensic pathology. He testified that Jackson died from blunt force trauma to the head, and that her injuries were consistent with being struck with a board or heavy stick.

After deliberations, the jury convicted Petitioner of capital murder, and he was sentenced to serve a term of life without the possibility of parole in the custody of the Mississippi Department of Corrections. Trial counsel filed a motion for a new trial that was denied by the trial court.

Thereafter, Petitioner, with the assistance of counsel, appealed his conviction and sentence to the Mississippi Supreme Court, raising the following grounds for relief:

Issue One:         Whether the trial court erred when it denied defense counsel's motion for a mistrial when it was brought to the trial court's attention that a juror made highly inappropriate comments prior to voir dire, in the presence of other prospective jurors.

Issue Two:         Whether the trial court erred when it allowed the State to impeach its own witness.

Issue Three:       Whether the trial court erred when it failed to grant Appellant his motion for a new trial on the grounds that the weight of the evidence was such that the Appellant should not have been convicted.

Issue Four:        Whether any of the above errors concerning violation of the Appellant's fair trial rights may be considered harmless.

Issue Five:        Whether cumulative error deprived Appellant of his fundamental right to a fair trial.

The Mississippi Supreme Court affirmed Petitioner's conviction and sentence. *Osborne v. State*, 54 So. 3d 841 (Miss. 2011); (Answer, Ex. A). Aggrieved of this decision, Petitioner, proceeding *pro se*, sought permission from the Mississippi Supreme Court to file a petition for post-conviction collateral relief, raising the following claims, as summarized by Respondent:

I. Ineffective assistance of counsel for:

  A. Failure to investigate the credentials of Dr. Hayne;
  B. Failure to object to the certification of Dr. Hayne as an expert;
  C. Failure to make the jury aware of the promises or deals made to the State's witnesses.

II. The trial judge conspired to deprive Osborne of a fair trial.

III. The trial court erred in failing to grant a mistrial upon learning that a member of the jury had made a prejudicial comment prior to jury selection.

IV. The trial court erred in failing to dismiss said juror for cause.

V. The trial judge demonstrated bias.

VI. The State committed a discovery violation regarding the fact that their witness, Jimmy Giles, was charged as an accessory after the fact rather than with capital murder.

VII. The trial court erred in certifying Dr. Hayne as an expert witness.

VIII. Osborne's Eighth Amendment rights were violated.

IX. The State presented perjured testimony through Dr. Hayne, Giles, and Jefferson.

X. The weight of the evidence did not support conviction.

The Mississippi Supreme Court denied the petition, holding in pertinent part:

The panel finds that the issues set forth by Osborne fail to overcome the burden established in *Strickland v. Washington*, 466 U.S. 668 (1984) and could have been presented at the direct appeal of this matter. *See* Miss. Code Ann. § 99-39-21(1). Notwithstanding the procedural bar, these issues fail to present a substantial

showing of the denial of a state or federal right as required by Miss. Code Ann. § 99-39-27. Therefore, the petition should be denied.

(Answer, Ex. B). Petitioner then filed this petition for writ of habeas corpus, raising the following grounds for relief, as summarized[2]:

| | |
|---|---|
| Ground One. | The verdict was against the weight of the evidence. |
| Ground Two. | The State knowingly elicited false evidence from Jimmy Giles. |
| Ground Three. | The trial court erred in failing to grant a mistrial after the defense alleged that a juror had been biased. |
| Ground Four. | The trial court erred in allowing Dr. Hayne to testify as an expert. |
| Ground Five. | Ineffective assistance of counsel for:<br><br>A. Trial counsel's failure to call requested witnesses;<br>B. Trial counsel's failure to move for a directed verdict when Giles stated that he did not know Osborne;<br>C. Trial counsel's failure to impeach certain evidence;<br>D. Trial and appellate counsel's failure to "allege actual prejudice." |
| Ground Six. | The trial judge was biased. |
| Ground Seven. | Osborne's right to be protected from cruel and unusual punishment was violated. |
| Ground Eight. | Prosecutorial misconduct in withholding the statements of Giles and Dr. Hayne. |
| Ground Nine. | Request for an evidentiary hearing on these issues. |

### Legal Standard

The Court's review of Petitioner's claims is governed by the Antiterrorism and

---

[2] The Court adopts Respondent's summary of Petitioner's claims for purposes of listing the arguments raised by Petitioner.

Effective Death Penalty Act of 1996 ("AEDPA"), because his federal habeas petition was filed after the statute's effective date. *See Lindh v. Murphy*, 521 U.S. 320 (1997). The AEDPA prohibits the grant of federal habeas relief on any claim adjudicated on the merits in state court unless that adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established United States Supreme Court precedent; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the presented evidence. *See* 28 U.S.C. § 2254(d)(1) & (2); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

A state court's decision is "contrary to" Supreme Court law if (1) "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). The "unreasonable application" clause is reserved for decisions that either fail to identify the correct governing law, or that identify the correct governing law but misapply it to the case. *Id*. at 407-08. Under this standard, a state court's decision will not warrant federal habeas relief unless its application of federal law is both "incorrect *and* unreasonable." *Garcia v. Dretke*, 388 F.3d 496, 500 (5th Cir. 2004) (emphasis in original) (citation omitted). A federal habeas court considers only the state court's conclusion when determining whether there has been an unreasonable application of federal law, and not the court's reasoning in reaching the decision. *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002).

**Discussion**

**I.      Procedurally defaulted claims.**

Respondent argues that the allegations of ineffective assistance that Petitioner raises in Ground Five (A), (B), and (D) were never presented to the State courts, and that they are, therefore, defaulted for purposes of federal habeas review.  Respondent also maintains that Petitioner's allegations in Grounds Two, Four, Five (C), Six, Seven, and Eight were procedurally barred by the Mississippi Supreme Court on post-conviction review, and that they, too, are defaulted for purposes of federal habeas review.

**A.      Ground Five (A), (B), and (D)**.

The Court first considers Respondent's argument that Petitioner has procedurally defaulted some of his claims in Ground Five by failing to present the claims to the State courts for review.  "Applicants seeking federal habeas relief under § 2254 are required to exhaust all claims in state court prior to requesting federal collateral relief."  *Fisher v. Texas*, 169 F.3d 295, 302 (5th Cir. 1999).  To satisfy this requirement, a federal habeas petitioner must generally present his claims to the state's highest court in a  procedurally proper manner and provide that court with a fair opportunity to pass upon the claims. *See O'Sullivan v. Boerckel*, 526 U.S. 838 (1999).  Here, Petitioner did not present the claims presented in Ground Five (A), (B), and (D) to the Mississippi Supreme Court, thereby forfeiting his opportunity to have the claims reviewed on their merits.  As Petitioner did not raise these claims in either his direct appeal or in his petition for post-conviction relief, he no longer has an available avenue through which to properly present these claims.  As such, these claims are procedurally barred from federal habeas review. *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001) ("If a petitioner fails to exhaust state remedies, but the court to which he would be required to return to meet the exhaustion

requirement would now find the claims procedurally barred, then there has been a procedural default for purposes of federal habeas corpus relief."); *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1995) (holding that when "it is obvious that the unexhausted claim would be procedurally barred in state court, we will forego the needless 'judicial ping-pong' and hold the claim procedurally barred from habeas review").

Therefore, in order to obtain habeas review of his defaulted claims, Petitioner must demonstrate cause for the default and actual prejudice as a result, or that failure to consider the claim would result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). "Cause" in this context is something external to the petitioner that cannot be fairly attributed to him. *Id*. at 753. While attorney error may constitute "cause" in some instances, attorney error that is not constitutionally ineffective will not excuse a procedural default. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Moreover, in order to argue the ineffective assistance of counsel as cause to overstep the procedural bar, Petitioner would have had to raise and exhaust an independent claim of ineffective assistance of appellate counsel for failure to raise the claims in Ground Five (A), (B), and (D). *See, e.g., Edwards v. Carpenter*, 529 U.S. 446, 452 (2000). Petitioner did not assert ineffective assistance for appellate counsel's failure to raise on direct appeal the claims he now presents in Ground Five (A), (B), and (D). Accordingly, Petitioner cannot rely upon appellate counsel's failure to raise these claims as "cause" to overcome the procedural default. Because Petitioner fails to demonstrate cause, the Court need not question whether there is prejudice. *See Martin v. Maxey*, 98 F.3d 844, 849 (5th Cir. 1996).

Neither does Petitioner establish that failure to consider his claims would result in a

fundamental miscarriage of justice.  The "fundamental miscarriage of justice" exception is

confined to cases of actual innocence where the petitioner shows, as a factual matter, that he did

not commit the crime of conviction.  *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999)

(citation and internal quotation marks omitted).  A petitioner claiming this exception must

present new, reliable evidence and show that it was "more likely than not that no reasonable

juror would have convicted him in light of the new evidence." *Id.* (citation omitted).  Petitioner

has not identified any new, reliable evidence to support his claims.  Therefore, Petitioner cannot

establish that a fundamental miscarriage of justice will result if these claims are not reviewed on

their merits.  Accordingly, the allegations contained in Ground Five (A), (B), and (D) are not

cognizable on federal habeas review.

**B.      Grounds Two, Four, Five (C), Six, Seven, and Eight**.

The claims Petitioner presents in Grounds Two, Four, Five (C), Six, Seven, and Eight

were held procedurally barred by the Mississippi Supreme Court on post-conviction review, as

they were capable of being presented on direct appeal.  (*See* Answer, Ex. B).  The Mississippi

Supreme Court held these claims procedurally barred pursuant to Mississippi Code Section 99-

39-21(1).  (*See* Answer, Ex. B).  That section reads:

> Failure by a prisoner to raise objection, defenses, claims, questions, issues or
> errors either in fact or law which were capable of determination at trial and/or on
> direct appeal. . . shall constitute waiver thereof and shall be procedurally barred,
> but the court may upon a showing of cause and actual prejudice grant relief from
> the waiver.

Miss. Code Ann. § 99-39-21(1). "When a state court declines to hear a prisoner's federal claims

because the prisoner failed to fulfill a state procedural requirement, federal habeas is generally

barred if the state procedural rule is independent and adequate to support the judgment." *Sayre*

*v. Anderson*, 238 F.3d 631, 634 (5th Cir. 2001) (citation omitted). The Fifth Circuit has held that § 99-39-21(1) is an independent state procedural bar. *Stokes v. Anderson*, 123 F.3d 858, 860 (5th Cir. 1997). The adequacy of the bar applied to Petitioner's claims depends on "whether Mississippi has strictly or regularly applied it." *Id.* (citation omitted). Petitioner bears "the burden of showing that the state did not strictly or regularly follow a procedural bar around the time of his appeal" and "must demonstrate that the state has failed to apply the procedural bar to claims identical or similar to those raised by the petitioner himself." *Id.* Petitioner has not carried this burden of proof and shown an "inconsistent and irregular" application of the bar. *Id.* at 861. He has, therefore, defaulted these federal claims pursuant to an independent and adequate state procedural rule. The court may review the merits of these claims only if Petitioner can show cause and actual prejudice, or that a fundamental miscarriage of justice would result from the Court's failure to consider the claims. *See, e.g., Coleman*, 501 U.S. at 750.

Petitioner has not identified any external action that resulted in his procedural default. *See, e.g., Coleman*, 501 U.S. at 753. He has not demonstrated any actual prejudice as a result of the imposition of this bar. Petitioner has not exhausted any allegations that appellate counsel was ineffective, and, as a result, Petitioner may not allege deficiency in appellate counsel's performance in an attempt to establish "cause" for the default. *See, e.g., Edwards*, 529 U.S. at 452. Finally, the Court notes that Petitioner has not presented any new, reliable evidence that would demonstrate that, "more likely than not [] no reasonable juror would have convicted him in light of the new evidence." *Fairman*, 188 F.3d at 644 (citations omitted).

The Court notes that in Ground Five (C), Petitioner raises a claim that counsel rendered

ineffective assistance in failing to object to or impeach Dr. Hayne's testimony. In *Martinez v. Ryan*, the Supreme Court held that where collateral proceedings present the first opportunity to raise a claim of ineffective assistance of trial counsel, "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance of trial." *Martinez v. Ryan*, 132 S. Ct. 1309, 1315 (2012). State courts in Mississippi "will consider an ineffective-assistance claim on direct appeal 'if the presented issues are based on facts fully apparent from the record.'" *Williams v. State*, 73 So. 3d 1125, 1129 (Miss. 2011). Petitioner was appointed different counsel for his direct appeal. This record-based claim of ineffective assistance could have been raised on direct appeal. Therefore, the claim is potentially barred. However, the Court notes that the Mississippi Supreme Court seems to have spoken with forked tongue on this issue, as it has also stated that "ineffective assistance of counsel claims are more appropriately brought during post-conviction proceedings." *Archer v. State*, 986 So. 2d 951, 955 (Miss. 2008). Therefore, out of an abundance of caution, the Court will also address the merits of the claim raised in Ground Five (C).

To merit relief on a claim of ineffective assistance of counsel, a habeas petitioner must satisfy the two-pronged test of *Strickland v. Washington*, 466 U.S. 668 (1984) by demonstrating both constitutionally deficient performance by counsel and actual prejudice as a result of such ineffective assistance. *Strickland*, 466 U.S. at 687. Under the deficiency prong of the test, the petitioner must show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Counsel's performance is deficient if "it falls below an objective standard of reasonableness" as measured

by professional norms. *Id*. at 688. Judicial scrutiny of counsel's performance is highly deferential, however, and "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. at 689 (citation omitted).

A petitioner satisfies *Strickland*'s prejudice prong by demonstrating that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. The failure to prove either deficient performance by counsel or actual prejudice as a result of counsel's actions or omissions defeats a claim of ineffective assistance. *See id.* at 687; *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998). In a case where the state court has rejected the merits of a petitioner's ineffectiveness claim, the "pivotal question" in a federal habeas proceeding "is whether the state court's application of the *Strickland* standard was unreasonable." *Harrington v. Richter*, ___ U.S. ___, 131 S. Ct. 770, 785 (2011).

Dr. Hayne was admitted as an expert in forensic pathology by the trial court. (Trial Tr. vol. 6, 479). Petitioner argues that Dr. Hayne was not qualified to testify as an expert in forensic pathology, and his attorney should have objected to Dr. Hayne's testimony. Mississippi law requires the State Medical Examiner to be certified in the area of forensic pathology by the American Board of Pathology. *See* Miss. Code Ann. § 41-61-55. While Dr. Hayne performs autopsies for the State Medical Examiner's Office, he is not the State Medical Examiner and is not required to be certified by the American Board of Pathology. *See Keys v. State*, 33 So. 3d 1143, 1149-50 (Miss. App. 2009). Moreover, the Mississippi Supreme Court has upheld Dr.

Hayne's status as a qualified expert in the field of forensic pathology. *See Lima v. State*, 7 So. 3d 903 (Miss. 2009). Therefore, counsel was not deficient for failing to raise an objection to Dr. Hayne's qualifications, as such an objection would have been meritless. *See Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994). Petitioner is not entitled to habeas relief on this claim.

Accordingly, the claims contained in Grounds Two, Four, Five (C), Six, Seven, and Eight are procedurally barred from federal habeas review. Additionally, for the reasons stated above, the Mississippi Supreme Court's alternative ruling that Petitioner's claim of ineffective assistance regarding Dr. Hayne's testimony is without merit is not an unreasonable application of *Strickland*.

## II.     The verdict is against the weight of the evidence (Ground One).

Petitioner argues that the lack of physical evidence against him, along with the fact that the State's witnesses were so unreliable, resulted in a guilty verdict that is against the weight of the evidence. Unlike a challenge to the *sufficiency* of the evidence[3], a claim challenging the *weight* of the evidence requires an assessment of the credibility of the evidence presented at trial. *Tibbs v. Florida*, 457 U.S. 31, 37-38 (1982). The jury, not a reviewing court, bears "the responsibility. . . fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* at 45 n.21 (citation omitted). Therefore, the weight of the evidence is not an issue assessed on federal habeas review. *See Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir. 1985) ("A federal habeas court has no power to

---

[3] The sufficiency of the evidence may be challenged on federal habeas review. The evidence is insufficient to support the verdict if, in viewing the evidence in the light most favorable to the prosecution, no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307 (1979).

grant habeas corpus relief because it finds that the state conviction is against the 'weight' of the evidence[.]").

Alternatively, the Court notes that the Mississippi Supreme Court considered Petitioner's challenge on direct appeal and held that the weight of the evidence supported the verdict. *Osborne*, 54 So. 3d at 846-48. The court noted that Giles implicated Petitioner in the attack on Jackson, and that Jefferson's account of what Petitioner relayed to him corroborated Giles' testimony. (*Id*. at 846-47). The court noted that the jury was made aware of Giles' inconsistent statements, and that the jury was instructed as how to view Giles' testimony in light of his hopes of immunization or leniency. (*Id*. at 847). It additionally noted that Jefferson specifically denied that anyone had promised him anything in exchange for his testimony. (*Id*. at 846). The court determined that the jury was in the best position to determine the credibility of Giles and Jefferson, and it determined that the jury verdict did not contradict the overwhelming weight of the evidence. (*Id*. at 846-47).

Accordingly, even if this claim were cognizable on federal habeas review, for the reasons set forth above, the Mississippi Supreme Court's decision that this claim is without merit is not contrary to, nor does it involve an unreasonable application of, clearly established federal law. The decision was not based on an unreasonable determination of facts in light of the evidence presented. Accordingly, Petitioner is not entitled to habeas relief with regard to this claim.

## III.    Trial court error in denying a mistrial after a juror admitted bias (Ground Three).

Petitioner argues that the trial court erred in failing to grant a mistrial when the defense asserted that a juror had been biased. Following the guilty verdict but before the sentencing hearing, one of Petitioner's defense attorneys informed the trial court that he had been

approached by a former venireman during the lunch break. (Trial Tr. vol. 6, 559). This individual, identified as Christopher Hull, stated that a venire member who was later chosen to serve on the jury stated, "let's go ahead and fry his ass so we can go home." (*Id*. at 559-60). Hull was referring to Juror Pitts. (*Id*. at 559). Defense counsel requested a mistrial. (*Id*. at 562). The trial judge stated in response:

> One, I don't think this rises to the level of a mistrial. We've got alternate jurors if we had needed them. You could rehabilitate a witness – I mean, a juror, under the case law that I know about. We don't know or have an idea at this point of really what was said or when it was said. So we're at an extreme disadvantage on that end. I do know I gave all the jurors an oath and asked them questions along this [*sic*] lines. So no answers were given, so we don't have that.

(SCR vol. 6, 563-64). The defense expressed concern about questioning the juror regarding the statement and then returning her to deliberations on the sentence. (*Id*. at 564-65). Eventually, Christopher Hull was brought to give testimony on the matter. (*Id*. at 569). He stated that, while they were waiting for jury selection, he heard someone identified as Juror Pitts state, "I wish we could just hang him and get it over with and get out of here." (*Id*. at 570). He stated that he told her that her attitude was inappropriate. (*Id*.). When asked whether he had interpreted the statement to mean that she was ready to impose the death penalty, Hull responded "[h]onestly, I don't know whether that's what she was saying or that she just wanted out." (*Id*. at 571). On cross-examination, Hull admitted that several members of the venire, who were not eventually chosen, were also anxious to leave. (*Id.* at 573).

Following this testimony, the trial judge noted, "I think that the meaning could have been as Mr. Mellen [the prosecutor] indicated, she just wanted out of here like most everybody else did. Perhaps it was a poor choice of words." (*Id*. at 574). The trial judge further found:

> But we did go through the litany of questions with regard to her ability to render a

fair and impartial verdict. If it was a reflection on the death penalty, that
wouldn't apply, I don't think, in the guilt phase. It would apply here in this
phase. I'm going to deny the motion for a directed verdict on the guilt phase.

(*Id.* at 576). The trial court indicated that he would replace Juror Pitts with an alternate for the
sentencing portion of trial.[4] (*Id.* at 578-79).

Once the jury retired to deliberate at sentencing, Juror Pitts was questioned. (*See id.* at
581-82). Juror Pitts stated that she did not remember making the statement and noted that she
"was just trying to get out of here." (*Id.*). She stated that she had not prejudged the case and
"didn't even know what was going on" at the time of jury selection. (*Id.*). Further, she stated
that she answered all of the questions during voir dire truthfully and had no predisposition
towards guilt or the death penalty prior to trial. (*Id.* at 583).

Respondent argues that Juror Pitts was not biased; Hull was unable to state whether the
comment he heard was an actual representation of her feeling about the case, or rather, just an
expression of his frustration with the delay. Respondent notes that Juror Pitts stated that she did
not remember making the comment, but she stated that she did honestly answer the questions
posed during voir dire. She also stated that, prior to trial, she had no preconceptions regarding
Petitioner's guilt or the appropriate sentence. Finally, Respondent claims, the trial judge stated
on the record his intention to replace Juror Pitts with an alternate for the sentencing phase of
trial. The Fifth Circuit has held:

Actual bias exists when a juror fails to answer a material question accurately
because he is biased. In the majority of situations, the party seeking a new trial
must demonstrate bias through admission or factual proof. Bias may, however, be

---

[4] Not all portions of the sentencing hearing were transcribed. Therefore, it is not
documented that the substitution occurred. Inasmuch as Juror Pitts remained the courtroom after
the jury retired to deliberate at sentencing, however, it is likely that a substitution did occur.

> implied or presumed in extreme circumstances, including when the juror is employed by the prosecuting agency, is a close relative of a participant in the trial, or is somehow involved in the transaction that is the subject of the trial. Indicia of partiality are particularly problematic when coupled with the juror's lies or other efforts to hid a potential disqualification.

*United States v. Bishop*, 264 F.3d 535, 554 (5th Cir. 2001) (internal citations and citation omitted). The United States Supreme Court has held that, in order to succeed on a claim of juror bias, "a party must first demonstrate that a juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause." *McDonough Power Equipment, Inc., v. Greenwood*, 464 U.S. 548, 556 (1984).

Under both State and federal law, the decision to grant or deny a motion for a mistrial is left to the discretion of the judge. *See United States v. Honer*, 225 F.3d 549, 555 (5th Cir. 2000); *Spann v. State*, 771 So. 2d 883, 889 (Miss. 2000). As such, the trial court's denial of Petitioner's request for a mistrial justifies federal habeas relief only if it was an "error . . . so extreme that it constitutes a denial of fundamental fairness under the Due Process Clause." *Bridge v. Lynaugh*, 838 F.2d 770, 772 (5th Cir. 1988).

On direct appeal, the Mississippi Supreme Court considered Petitioner's allegations regarding Juror Pitts and held:

> If a prospective juror does not respond to a question posed during voir dire, this Court must determine whether the question was "(1) relevant to the voir dire examination; (2) ... unambiguous; and (3) whether the juror had substantial knowledge of the information sought to be elicited." *Odom v. State*, 355 So.2d 1381, 1383 (Miss.1978). If all answers to the above questions are affirmative, then we must determine if prejudice could be inferred from the juror's failure to respond. *Id.*

> In order to reach the *Odom* questions, Osborne must show Pitts failed or refused to respond to a specific question on voir dire. While Osborne does not point to a

particular question Pitts failed to answer during voir dire, the record does not indicate that she withheld information when she was questioned about her impartiality. Hull's allegation is the only evidence supporting this conclusion, and the trial court found that it lacked merit. But, assuming all the *Odom* questions are answered in the affirmative, Osborne suffered no prejudice from Pitts serving as a juror during the guilt phase of his trial.

To show prejudice, Osborne must demonstrate the trial court's determination that the jury was fair and impartial was clearly erroneous. *Ross v. State*, 954 So.2d 968, 988 (Miss.2007). Before trial, the court and both attorneys repeatedly asked venire members about their ability to remain impartial and decide the case on the evidence presented. Venire members confirmed their ability to render a verdict solely on the evidence presented at trial. During individual questioning about her views on the death penalty, Pitts affirmed that she would follow the law. Her post-trial questioning did not contradict her answers on voir dire. On each of these occasions, Pitts confirmed that she could perform her duties as required by law and that she had been impartial before Osborne's trial. The trial court determined that her statement reflected an aversion to jury duty rather than bias or a preconceived notion of guilt. The trial judge repeatedly expressed the intent to grant defense counsel's request to replace Pitts with an alternate juror for the sentencing phase of Osborne's trial, although the record does not specifically state whether he acted on that intention. By virtue of his immediate perception of the witness and the events, the trial judge was in the best position to determine whether the jury was impartial. Therefore, the trial court properly exercised its discretion in refusing to grant a mistrial, and Osborne's claim for relief on this ground is denied.

*Osborne*, 54 So. 3d at 844-45.

For the reasons as set forth by the Mississippi Supreme Court, this Court does not find that the Mississippi Supreme Court's decision rejecting this claim is either contrary to, or that it involves an unreasonable application of, clearly established federal law. The Court further finds that the decision is not based on an unreasonable determination of facts in light of the evidence presented. Habeas relief on this ground is denied, but the Court will issue a certificate of appealability on this issue.

**IV.     Evidentiary hearing.**

Petitioner asks that the Court grant him an evidentiary hearing on his allegations. The

holding of federal evidentiary hearings is governed by 28 U.S.C. § 2254(e)(2), which reads:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on this claim unless the applicant shows that -
>
> (A) the claim relies on -
>
> > (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> >
> > (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2). The United States Supreme Court has held that "[p]rovisions like §§ 2254(d)(1) and (e)(2) ensure that '[f]ederal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings.'" *Cullen v. Pinholster*, 131 S. Ct. 1388, 1401 (2011) (citations omitted). Petitioner has failed to demonstrate that his case falls within the narrow restrictions where an evidentiary hearing is warranted. The Court has been provided with Petitioner's petition and supporting memorandum, Respondent's answer and exhibits, and the State court record. Therefore, the Court finds that there is no need for an evidentiary hearing in this case. *See, e.g., Clark v. Johnson*, 202 F.3d 760, 766 (5th Cir. 2000) (holding that the Fifth Circuit has "repeatedly found that a paper hearing is sufficient to afford a petitioner a full and fair hearing on the factual issues underlying the petitioner's claims").

## Certificate of Appealability

Petitioner must obtain a certificate of appealability ("COA") before appealing this

Court's decision denying federal habeas relief. 28 U.S.C. § 2253(c)(1). A COA will not issue unless Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To obtain a COA on any claim rejected on its merits, Petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). To obtain a COA on a claim that has been rejected on procedural grounds, Petitioner must demonstrate "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* Applying these standards, the Court concludes that a COA should be granted as to Petitioner's claim that the trial court erred in refusing to grant a mistrial based on allegations of juror bias (Ground Three). A COA is denied as to all other claims.

### Conclusion

It is hereby ordered that Petitioner's petition for a writ of habeas corpus is **DENIED**, and that this action is **DISMISSED WITH PREJUDICE**. A certificate of appealability is **GRANTED** as to Petitioner's claim that the trial court erred in denying a mistrial based on allegations of juror bias. All pending motions are **DISMISSED AS MOOT**. A final judgment in accordance with this opinion and order will issue today.

**SO ORDERED, THIS** the 24th day of July, 2014.

 /s/ Neal Biggers
**NEAL B. BIGGERS, JR.**
**UNITED STATES DISTRICT JUDGE**